IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

**FILED**

4:10 pm, 12/7/22

**Margaret Botkins**
**Clerk of Court**

MICHAEL ELSASSER,

        Plaintiff,

    vs.

DEVON ENERGY PRODUCTION
COMPANY, L.P.,

        Defendants.

Case No.  21-CV-00182-NDF

MARCUS MURSCHEL,

        Consolidated Plaintiff,

    vs.

DEVON ENERGY PRODUCTION
COMPANY, L.P.,

        Defendants.

Case No.  21-CV-00183-NDF

RYAN REMINGTON, MORGAN
REMINGTON, T.R., a minor child, K.R., a
minor child, and A.R., a minor child,

        Consolidated Plaintiffs,

    vs.

DEVON ENERGY PRODUCTION
COMPANY, L.P.,

        Defendants.

Case No.  22-CV-00064-NDF

ORDER GRANTING CONSOLIDATED PLAINTIFFS'
MOTION TO COMPEL [ECF No. 55]

Before the Court is Consolidated Plaintiffs' Motion to Compel. [ECF No. 55]. Having carefully considered the Motion, Response, and Reply, and being fully advised in the premises, the Court finds the PowerPoint at issue shall be discoverable and does not fall within the privileges asserted by the Defendant. [ECF Nos. 55, 56, 57, 58, 59, 62, 63]. In light of the Court's findings below, the Motion to Compel is GRANTED.

## BACKGROUND

In 2018, the Defendant, Devon Energy Production Company, L.P., (Defendant or Devon) operated an oil and gas lease at the Sherwood #1 Federal Site near Gillette, Wyoming. [ECF No. 56]. On or about the beginning of October that year, a gas leak was discovered. *Id*. On October 4, 2018, Plaintiffs Michael Elasser, Ryan Remington, and Marcus Murschel, working for other entities, met at the site to attempt to find and fix the leak. *Id*. Tron Riley, an employee of the Defendant, arrived at the site to help and to oversee the operation. *Id*. at 2-3. During the operation, an explosion occurred seriously injuring the Plaintiffs and this lawsuit ensued.

Since at least 2005, Devon has had procedures in place for investigating incidents. [ECF Nos. 50 at ¶ 5, 56-10]. These incident investigations, according to McDaniel's declaration, fall into three general categories:

1. Less serious incidents involving no injury or less than life threatening injury are generally investigated by Defendant's contractors. [ECF Nos. 50 at ¶ 5].

2. More serious incidents, but still non-life-threatening injuries, and may include things such as equipment failures, car accidents, and leaks. *Id*. These investigations are generally conducted by either Devon contractors and/or Devon employees. *Id*.

One of the purposes of these types of investigations is to determine if improvements or changes can be made to avoid similar events in the future. *Id*.

3.  The final category are those incidents involving serious injury or fatality (SIF) which are likely to lead to litigation. *Id*. at ¶6. SIF investigations are usually led by the legal department who initiates a "privileged investigation." *Id*.

Although McDaniel's declaration states the above protocol involves litigation, there is nothing in Devon's written protocol that mentions lawyers or automatic confidential investigation. *Id*.; [ECF No. 56-10 at 2]. The SIF protocol outlines eleven steps to be conducted by a person in charge with the company's Environmental Health and Safety department (EHS). [ECF Nos. 50, 56-10 at 2]. The protocol suggests the types of employees who may be part of the investigative team. *Id*. Yet, within the protocol there is no mention of an attorney being required to participate in the investigative team. The protocol mentions that the "Legal Department may issue guidance for significant events." *Id*. If the investigation is "formal," the investigation and its conclusions are to be documented and should include "corrective actions", and "root cause(s) including comments for the cause(s) identified." *Id*. at 3. The last portion of the investigation "will conclude with both management review and a written report." *Id*. at 4. The purpose of addressing corrective action is to "keep the event from reoccurring." *Id*. at 5.

Pursuant to Devon's standard protocol, it quickly instigated an investigation into the explosion and its cause, with multiple employees visiting the site. *Id*. at 3. Shortly thereafter, Devon's in-house counsel at the time, Dan Isenhower, (Isenhower) located in Oklahoma, sent an email to the EHS requesting assistance in conducting a "privileged and confidential" investigation into the explosion. *Id*. at 4. In the days that followed the explosion, Devon developed an Incident Command Team (ICT) to conduct the investigation. Individuals on this team comprised of the

Defendant's Gillette, Wyoming office. *Id*. Members of the ICT testified that the ICT conducted the investigation with some assistance from Oklahoma, but do not recall any participation by Isenhower or any other attorney. *Id*. The ICT interviewed various witnesses and visited the site of the explosion. At various times during the investigation, information was reported to Isenhower. *Id*. at 4-5.

At the end of the investigation, Isenhower "worked on and revised" a draft PowerPoint presentation containing the results of ICT's investigation. [ECF No. 50 at ¶ 12]. Mitch Worley, a Devon EHS employee, and Isenhower discussed "causal factors" to include in the PowerPoint. *Id*.; [ECF No. 56-2 at 3]. The PowerPoint was then presented to Isenhower and other Devon management. [ECF No. 50 at ¶ 12]. Defendant represents that this PowerPoint presentation is the only formal "report" of the investigation that exists, and no other documents have been located or exist that conform to Devon's investigation protocol. *Id*. at ¶ 18-20.

When an issue involving potential litigation arises, the Defendant also has specific procedures in place separate from a SIF investigation. If Devon is sued or becomes aware of potential litigation, the legal department sends out requests to potential custodians of records to preserve all electronic information and documents that may be related to the litigation. *Id*. at ¶ 4. On December 14, 2018, Isenhower issued a legal hold for documents related to this case. *Id*. at ¶ 14.

During the discovery process, Plaintiffs made requests for multiple documents (including a privilege log if such claims were made) relating to Devon's investigation into the October 4, 2018 incident. [ECF Nos. 50 at 6, 56 at 6, 56-7, 56-8, ]. In response, Defendant claimed it had produced all relevant documents except for a PowerPoint which it claims is protected by the attorney-client privilege and/or work product doctrine. [ECF Nos. 50 at 6, 56-8 at 4-7]. No

privilege log was provided. Rather, Devon filed a Declaration of Mark B. McDaniel which provided some information regarding the preparation of the PowerPoint and other discovery related issues. [ECF No. 50]. Attached to the Declaration is the PowerPoint at issue for the Court's *in camera* review. [ECF No. 50-4]

**Plaintiffs' Motion to Compel and Brief [ECF Nos. 55, 56]**

Plaintiffs argue that Defendant should turn over the PowerPoint in question as it was prepared primarily for business, not legal purposes, and neither the attorney-client privilege nor the work product doctrine protect disclosure. [ECF No. 55]. Plaintiffs contend that since Isenhower was in-house counsel, there is a presumption that Isenhower's involvement was more akin to business advice than legal advice. [ECF No. 56 at 10-14]. Furthermore, Plaintiffs assert that Defendant fails to establish that privilege applies. [ECF No. 55 at 3].

**Defendant's Response [ECF No. 59]**

Defendant opposes Plaintiffs' Motion and maintains its claim of attorney-client privilege and the work product doctrine. [ECF No. 59]. Defendant claims that on the day of the incident, attorney Isenhower sent an email initiating a "privileged and confidential investigation"; that Isenhower was involved in all stages of the investigation; and that he reviewed the facts uncovered by the investigation and gave legal opinions regarding the causal factors. *Id*. at 2-3. Defendant asserts Isenhower had input into editing the PowerPoint and gave legal advice to conclusions contained in the PowerPoint. *Id*. at 3. In addition, Defendant disputes Plaintiffs' assertion regarding the presumption that in-house counsel is more akin to a business advisor than legal advisor. *Id*. at 3-5. At the end of the Response, Defendant concedes there are portions of the PowerPoint not privileged and provided the Court a copy of the PowerPoint *in camera*, highlighting the specific information it claims as privileged. *Id*. at 8; [ECF No. 50-4].

**Plaintiffs' Reply [ECF No. 62]**

In the Reply, Plaintiffs stress the rebuttable presumption applying to in-house counsel and its role being more akin to a business role than legal counsel. [ECF No. 62]. Plaintiffs further argue that regardless of Isenhower's role, the primary purpose of the PowerPoint was for business purposes, and any legal advice or contents was merely incidental. *Id.* at 4-6. Plaintiffs suggest that if the PowerPoint contains findings and conclusions from the investigation, including any corrective actions, this information is "underlying facts" and thus not privileged. *Id.* at 6-7. Plaintiffs steadfastly hold that, to the extent any information was privileged, the Defendant waived its privilege by responding to the OSHA investigation and letting its employees testify about these matters. *Id.* at 7-8. Plaintiffs' final allegation is that the PowerPoint does not contain Insenhower's thoughts or impressions since it was presented by another individual; therefore, the PowerPoint should not be considered as work product. *Id.* at 8-9.

RULING OF THE COURT

The issue before the Court is whether the PowerPoint sought by Plaintiffs is protected from discovery by the attorney-client privilege and/or the work product doctrine. If the Court finds that the attorney-client privilege applies, then the Court must consider whether the Defendant waived the privilege by presenting the PowerPoint to third parties.

Pursuant to the Federal Rules of Civil Procedure, parties to a lawsuit may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1). The information need not be admissible at trial to be discoverable. *Id.* A trial court has broad discretion in implementing terms and conditions of discovery. *Marsee v. U.S. Tobacco Co.,* 866 F.2d 319, 326 (10th Cir. 1989) (reenforcing deference given to a trial judge's rulings on evidence unless there is an obvious abuse of discretion.). A party withholding

information otherwise discoverable, claiming privilege and/or work product, must "expressly make the claim" and describe the information in a manner that allows the other party to assess its avowal. *Id.* at 26(b)(5)(i) and (ii). Pursuant to the Local Rules, a party asserting a privilege must provide the requesting party with, among other things, the general subject matter of the document, the author of the document, all recipients of the document and "their titles, positions and specific job-related duties, and the relationship of the author and all recipients to one another." U.S.D.C.L.R. 34.1(c).

In diversity cases, Rule 501 of the Federal Rules of Evidence provides that state law governs claims of privilege. Therefore, Wyoming law controls the issue. *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998); *Racher v. Westlake Nursing Home, Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) (The trial court should apply state substantive law and federal procedural law.). Under Wyoming law, the party seeking to establish attorney-client privilege has the burden of establishing its applicability to the material in question. *WyoLaw, LLC v. Office of Attorney General, Consumer Protection Unit*, 486 P.3d 964, 977 (Wyo. 2021) (*quoting F.D.I.C. v. United Pac. Ins. Co.,* 152 F.3d 1266, 1276 n.6 (10th Cir. 1998)). Blanket assertions of privilege are not sufficient to meet this burden. *Id*.

While the Defendant provided a good deal of information in the declaration of McDaniel, much of the required information is missing. [ECF No. 50]; *see also* U.S.D.C.L.R. 34.1(c). The declaration states that on November 5, 2018, Isenhower "worked on and revised the draft Power Point Presentation." [ECF No. 50 at ¶ 12]. It does not state that he was the creator or author of the document. It further states that on November 12, 2018, the "Power Point document . . . was revised." *Id*. The use of the passive voice is telling, it fails to identify who specifically worked on and revised the document. And yet again, on November 18, 2018, the Power Point "was presented"

in a management meeting *to* Isenhower and Devon Management. *Id.* This information fails to comply with the Local Rules. It fails to identify who presented the PowerPoint, everyone it was presented to and the relationship of the "author" to the recipients of the PowerPoint. *See* U.S.D.C.L.R. 34.1(c). The omission of this information make it difficult for the Defendant to meet its burden of establishing the material is privilege.

**Wyoming: Attorney-Client Privilege**

The purpose of the attorney-client privilege is to promote full and frank disclosures between attorneys and their clients. *WyoLaw*, 486 P.3d at 978; *In re Grand Jury Proceeding,* 616 F.3d 1172, 1182 (10th Cir. 2010) ("The attorney-client privilege is the oldest of privileges for confidential communications known to the common law.") (*quoting Upjohn v. United States,* 449 U.S. 383, 389 (1981)). The mere fact that a lawyer is involved in a communication does not make it privileged. *Id.* (citation omitted). Rather, the communication must be related to legal advice or strategy sought by the client. *Id.* (citation omitted); *see also WyoLaw*, 486 P.3d at 979. The privilege applies to communications made from the client to the lawyer and communication from the lawyer to the client–if it constitutes legal advice. *In re Grand Jury Proceeding*, 616 F.3d at 1182 (internal citations omitted); *see* Wyo. Stat. Ann. § 1-12-101 (2022). The privilege is to be strictly construed. *In re Grand Jury Proceeding*, 616 F.3d at 1183.

Here, the question is whether the information in the PowerPoint is more akin to legal advice and thus privileged, or more akin to business advice. If it is more akin to business advice, the attorney-client privilege does not protect it. The mere fact that an attorney is involved in a communication, does not, by itself, automatically result in a privileged communication. *Id.*; *WyoLaw*, 486 P.3d at 979 ("attorney-client privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with [the]

attorney.") (internal quotations omitted). A corporation and its in-house counsel are entitled to the privilege if the attorney was providing services of a legal nature at the time of the communication. *Chesapeake Cas. Co. v. Skaj,* 2012 WL 12541138 p.3 (D. Wyo.) (*citing* 8 *Federal Practice and Procedure* section 2017, at 433). However, it is commonly recognized that in-house counsel often hold roles that are non-legal and predominately business oriented. *See Anaya v. CBS Broad., Inc.,* 251 F.R.D. 645, 650 (D.N.M. 2007) ("In-house counsel's communications regarding business matters, management decisions, and business advice, which neither solicit [n]or predominantly deliver legal advice, are not privileged.") (citing James Wm. Moore*, Moore's Federal Practice* § 26.49[4], at 26-182 (3d ed. 1997)). Not all information communicated between an attorney and his client is protected by the attorney-client privilege.

Wyoming's statute fails to provide direction on how to determine attorney-client privilege. Reviewing other Tenth Circuit states' interpretation of attorney-client privilege provides the Court with a more detailed rule for diversity cases and applying the attorney-client privilege. For Oklahoma, the state court adopted the following fact driven determination for whether the attorney-client privilege should apply:

> (1) If the attorney is providing business advice to the client, even if resulting from a confidential request, no attorney-client privilege attaches to the communication. *See* [*In re CFS-Related Sec. Fraud Litig.*, 223 F.R.D. 631, 635 (N.D. Okla. 2004)] (Although the privilege may be invoked by a corporate client, "communications between a lawyer and the lawyer's client for the purpose of obtaining legal advice is a privileged communication which is protected by the legal process.").[fn. 11 omitted]
>
> (2) If an attorney is providing legal advice to the client at the client's request, the attorney-client privilege protects the confidentiality of the client's communication as well as the legal advice as it pertains to the client's confidential communication. *See Pacific Gas and Electric Co. v. United States*, 69 Fed.Cl. 784, 811 (Fed.Cl. 2006) ("The attorney-client privilege only affords protection to

confidential communications seeking or rendering legal, rather than business, advice.").

(3) If the communication involves both business and legal issues, the Court must determine the primary or predominant purpose of the communication.

(a) If primarily a business purpose, the privilege does not attach and the document must be produced. [fn. 12 omitted] *Neuberger Berman*[ *Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 411 (D. Md. 2005)] ("When the legal advice is merely incidental to business advice, the privilege does not apply.").

(b) If primarily a legal purpose and the business portions of the document or communication are distinct and severable and their disclosure would not indirectly reveal the substance of the protected legal portion, the document - redacted of the privileged portions - should be produced. *Scott*[ *v. Peterson*, 126 P.3d 1232, 1234 (Okla. 2005)] ("When only a part of a communication between attorney and client is privileged and if the privileged and unprivileged parts may be safely separated, then the privileged matter only will be excluded.").

(c) Where, however, the legal and business purposes of the communication are inextricably intertwined, the entire communication is privileged only if the legal purpose outweighs the business purpose. *See Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.,* 951 F.Supp. 679, 685-86 (W.D.Mich.1996) (Legal and business considerations may frequently be inextricably intertwined when legal advice is rendered in the corporate context, but the fact that business considerations are weighed in the rendering of legal advice will not vitiate the attorney-client privilege.)

*Lindley v. Life Inv'rs Ins. Co. of Am.*, 267 F.R.D. 382, 391-92 (N.D. Okla. 2010) (further citations omitted). In *Lindley*, the court did not apply a rebuttable presumption of either an automatic privilege shield for in-house counsel, nor did it immediately give all communication for in-house counsel no protection at all. *Id.* Whether an attorney is in-house counsel or outside counsel is but one factor to consider. *Id.* Factors to consider include "the status of the attorney, the nature of the advice given, the context, content and purpose of the communication." *Id*. at 391 (Yet, some courts

have presented a rebuttable presumption in the context of an insurer's investigatory file) (*Id.* at 399); *see also McCarty v. Liberty Mutual Ins. Co.,* 2016 WL 8290 3 (D. Wyo. Sept. 27, 2016). There is nothing in Wyoming case law or the Tenth Circuit indicating either court would adopt this rebuttable presumption argued by Plaintiff. Therefore, this Court will not apply a rebuttable presumption to Isenhower in this case, but rather will consider the factors as outlined in *Lindley*.

**Nature of the advice given**

In reviewing the PowerPoint presentation, the Court finds that the "nature of advice given" appears to be more factually based conclusions, to include potential future remedial procedures to implement in the field, rather than legal advice or conclusions. The information appears as conclusions based upon the investigation done pursuant to Devon's standard business protocol and not pursuant to a specific legal matter.

The investigation began even before Isenhower's request. The investigative team members, ICT, and its actions were dictated by Devon's long-standing protocol for business purposes. The protocol merely mentions that counsel may have some input into the investigation, but even the protocol does not state every SIF investigation is confidential or done for legal advice.

While Isenhower may have had an interest in the investigation and its results for potential future litigation, that was not the purpose of the investigation, nor did it involve application of legal analysis in the PowerPoint. The investigation and presentation would have been done with or without Isenhower's participation. It is not clear how the claimed privileged information would constitute as legal advice. The PowerPoint does not appear to contain any legal advice or legal conclusions.

Furthermore, the other information in the PowerPoint addressing potential remedial measures, were provided to OSHA and subsequently implemented by the Defendant. This

information has previously been provided to Plaintiffs in discovery. Overall, the PowerPoint contains information which has either already been provided to Plaintiffs or which appear to answer, in perhaps more detail, questions already asked of Devon employees in depositions.

The Court notes that neither party allege that Defendant objected to deposition questions which could have elicited the same information as outlined in the PowerPoint. Instead, it appears the witnesses either did not remember or did not fully answer the questions. [ECF Nos. 56, 56-2, 56-3, 56-4, 56-5, 56-7, 57, 58-1, 62-1, 62-2, 62-3, 62-4].

Finally, the context and the contents are also telling. The context of the PowerPoint is that it was presented *to* Isenhower and other Devon management (as previously stated, who exactly this encompassed is not clear). Again, this context supports that the PowerPoint and the information contained therein were primarily for business practices. The Court finds that the information contained in the PowerPoint presentation was created for business purposes and not legal advice.  Therefore, it is not protected by the attorney-client privilege.

**Work Product Doctrine**

While attorney-client privilege is governed by state law in a diversity case, the work product doctrine is governed by federal law.  *Cornhusker Cas. Co. v. Skaj*, 2012 WL 12541138 at 2 (D. Wyo. 2012) (*citing Frontier Refining*, 136 F.3d at 702 n.10)*.* "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[, ]including the other party's attorney[.]" Fed. R. Civ. P. 26(b)(3)(A). The premise is that an attorney needs to be able to work with a certain degree of privacy for his or her thoughts to flow freely and without the fear of their efforts being disclosed. *Frontier Refining*, 136 F.3d at 704; *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184 (10th Cir.

2010); *also see In re GM LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 531 (S.D.N.Y. Jan. 15, 2015).

      "The producing party must preserve the information until the claim is resolved" and the party objecting to disclosure based on work product protections has the burden to prove applicability. Fed. R. Civ. P. 26(b)(5)(B); *Frontier*, 136 F.3d at 704; *In re Grand Jury Proceedings*, 616 F.3d at 1185.

> Accordingly, to demonstrate that material is protected by the attorney work product doctrine, a party need only show that, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. Work product protection does not apply to documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation.

*In re GM LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 532 (S.D.N.Y. 2015) (internal citations omitted); *see also Frontier*, 136 F.3d at 702-703 (work product doctrine applies to any type of litigation, even if it is in the future and not entirely anticipated; if the materials are prepared for the purpose of litigation, that suffices); *Schaeffler v. U.S.*, 806 F.3d 34, 43-44 (2nd Cir. 2015) (For attorney work doctrine, "protection would be withheld only from documents that were prepared in the ordinary course of business in a form that would not vary regardless of whether litigation was expected.") Here, other than a general assertion in the Defendant's objections to the Request for Production and the statement in Defendant's Response that the "redactions constitute . . . Mr. Isenhower's work product" and were prepared in anticipation of OSHA litigation (ECF No. 59 at 7-8), the Defendant fails to establish the law regarding work product and how it applies in this case.

"The critical inquiry becomes whether the document would have been created regardless of the anticipated litigation[,]" and this Court, as discussed above, determines the PowerPoint was a result of a long standing business practice by Defendant. *McCarty v. Liberty Mutual Ins. Co.*, 2016 WL 8290 3 (D. Wyo.) (*quoting United States v. Cmty. Health Sys., Inc.*, No. 05-279 WJ/ACT, 2012 WL 12546808, at 3 (D.N.M. Jan. 13, 2012)); *see also Frontier*, 136 F.3d at 702-703; *Schaeffler*, 806 F. 3d at 44-45; *GM LLC Ignition Switch*, 80 F. Supp. 3d at 532. Therefore, the Court finds that the PowerPoint presentation is not protected by the work product doctrine.

## CONCLUSION

The Court finds the information which the Defendant claims is privileged in the PowerPoint presentation is not protected by the attorney-client privilege or work product doctrine.

THEREFORE, IT IS ORDERED that the Motion to Compel [ECF No. 55] filed by the Consolidated Plaintiffs is GRANTED.

FURTHERMORE, the PowerPoint provided to the Court for the *in camera* review shall be immediately turned over to the Plaintiffs by the Defendant.

Dated this 7th day of December, 2022.


STEPHANIE A. HAMBRICK
United States Magistrate Judge